UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ERIC JONES,

                Plaintiff,                No. 04-CV-74540-DT

vs.                                         Hon. Gerald E. Rosen

THE UNITED STATES
POSTAL SERVICE, et al.,

                Defendant.
_____/

OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS

    At a session of said Court, held in
    the U.S. Courthouse, Detroit, Michigan
    on      September 30, 2005

    PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

    This hybrid Section 301 breach of contract/breach of duty of fair representation claim is presently before the Court on the Motion to Dismiss filed by the American Postal Workers Union, AFL-CIO (the "APWU" or the "Union") and Richard Blake[1] seeking dismissal of Plaintiff's breach of duty of fair representation claim on statute of limitations

---

[1] In Plaintiffs' Response Brief, Plaintiff concurs in the dismissal of Richard Blake. Therefore, Mr. Blake will be dismissed from this case and the Court will proceed with the adjudication of this motion only with respect to the Defendant Union.

1

grounds.[2]  Plaintiff has responded to Defendants' Motion and Defendants have replied.

Having reviewed and considered the parties briefs and supporting documents, the Court has determined that oral argument is not necessary.  Therefore, pursuant to Local Rule 7.1(e)(2), this matter will be decided on the briefs.  This Opinion an Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

### THE PARTIES

Plaintiff Eric Jones is a postal clerk at the Saline, Michigan Post Office. Defendant American Postal Workers Union, AFL-CIO, is the exclusive collective bargaining representative of employees in the United States Postal Service in the clerk, maintenance, and motor vehicle service crafts.  Defendant Richard Blake is the Area 3 Director of the Michigan Postal Workers Union.  In this capacity, Blake represents bargaining unit employees in cities with zip codes beginning "481," including Plaintiff Jones, in the filing and processing of grievances over violations of the Collective Bargaining Agreement between the United States Postal Service and the APWU (the "CBA" or the "National Agreement").  Grievances at Step 1 and Step 2 are handled at the local level; grievances that proceed beyond Step 3 are handled by agents of the National Union.

---

[2] Defendants also originally sought dismissal on an alternate ground -- improper service of process.  However, Plaintiff has since correctly served the Union and, accordingly, Defendants have withdrawn their alternative improper service argument.

PLAINTIFF'S GRIEVANCE

In December 2001, Plaintiff Jones contacted Richard Blake to complain about his loss of seniority and the involuntary change in his status from "full-time regular" to "part-time flexible" status. Jones' change in status related to his move from a position working as a Level 5 Maintenance Mechanic at the Detroit Bulk Mail Center back to a position he had held previously as a Distribution Clerk at the Saline, Michigan Post Office.[3] Blake informed Plaintiff that under Article 37 of the CBA, a full-time employee begins a new period of seniority when, at the employee's request, he changes from one postal installation to another, which was what Plaintiff Jones had done in this case.[4]

---

[3] According to Plaintiff's Complaint, he applied for the Maintenance Mechanic position on September 1, 2001 but at a September 26 general orientation, he was informed that the position available to him did not have regular hours. Therefore, he immediately called his former supervisor, the Saline Postmaster, who informed him that his former position with the Saline Post Office was still his because no transfer had been effected and advised him to contact Human Resources to inform them of his decision. Plaintiff claims that he was told to remain at the Bulk Mail Center a few weeks to accommodate payroll concerns. It was not until November 30, 2001 that he received a notice that he was to return to the Saline Post Office on December 1, 2001. When he reported for work at the Saline Post Office on December 1, he was informed that he had been transferred from full-time regular status to part-time flexible status. [*See* Complaint, ¶¶ 13-29.]

[4] Article 37.2D.6 of the CBA provides, in pertinent part:

6. **Changes in Which Seniority is Lost**

Except as specifically provided elsewhere in this Agreement, a full-time employee or a part-time regular employee begins a new period of seniority:

    a. When the change is:

3

Notwithstanding that Article 37 provided for Jones' loss of seniority due to his voluntary transfer from the Detroit Bulk Mail Center, on December 5, 2001, Blake submitted to the Saline Postmaster a "Request for Information & Documents Relative to Processing a Grievance." The Postmaster responded by returning the informational request with a notation that "Non[e] of this information is in Saline." Blake then asked the Saline Postmaster to forward the form to the appropriate office. Blake was also aware that Plaintiff had been corresponding himself with the Postal Service in an effort to have his change of status reviewed and to have his request to change back to full-time regular status granted. On February 8, 2002, the District Manager responded to Plaintiff's request stating that he found no reason to reverse Plaintiff's current status as a part-time flexible employee.

Blake interpreted the District Manager's February 8, 2002 letter as a formal denial of Plaintiff's request to be returned to full-time regular status. Also, by this time, the Postal Service had complied with Blake's request for documentation relating to Plaintiff's transfer and, on February 21, 2002 -- i.e., within 14 days of the District Manager's February 8 letter -- Blake filed a grievance on behalf of Plaintiff.

---

(1) from one postal installation to another at the employee's request.

(2) from another craft to the Clerk Craft (voluntarily or involuntarily).

[*See* Blake Decl., Ex. A.]

The grievance was denied at both Step 1 and Step 2 of the grievance process. During Step 2 of the grievance process, the Postal Service raised the issue of timeliness regarding the filing of Plaintiff's grievance. Under Article 15 of the Collective Bargaining Agreement,

> Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause.

The Postal Service's position at the Step 2 grievance meeting on June 20, 2002 and in its Grievance Summary-Step 2 was that the grievance should have been filed 14 days from September 27, 2001, when Plaintiff turned down the Maintenance Mechanic position and requested to be returned to his former position as a Distribution Clerk.

Plaintiff's grievance proceeded to arbitration before Arbitrator Alan Walt in July 2002. Two issues were presented to the arbitrator for resolution: (1) whether the grievance was timely filed, and (2) if so, did the Postal Service violate the CBA when it reassigned Plaintiff to part-time flexible status.

At the arbitration hearings on March 1 and March 11, 2004, the Postal Service argued that Plaintiff's grievance should be dismissed because it was untimely filed. Plaintiff Jones was present at these hearings. Ultimately, on May 20, 2004, Arbitrator Walt dismissed Plaintiff's grievance as untimely, stating that the grievance should have been filed within fourteen days of December 1, 2001, when Plaintiff became aware that his status had changed from full-time to part-time upon his return to the Saline Post

5

Office.[5]

On November 19, 2004, Plaintiff filed the instant hybrid § 301 breach of contract/breach of duty of fair representation lawsuit. With respect to his DFR claim, Plaintiff alleges that the Union breached its duty of fair representation by failing to timely file his grievance. After several extensions of time within which to answer Plaintiff's Complaint, the APWU and Richard Blake filed the instant Fed. R. Civ. P. 12(b)(6) motion as their initial responsive pleading. In their Motion, Defendants claim that as a matter of law, Plaintiff's claim against the Union must be dismissed because Plaintiff failed to file this action within the six month period of limitations applicable to breach of duty of fair representation claims.[6]

Although captioned as a Rule 12(b)(6) motion, because Defendants rely on matters outside the pleadings, the Court will treat this motion as on for summary

---

[5] Following the arbitrator's decision, on June 2, 2004, Jones filed a charge against Richard Blake with the National Labor Relations Board ("NLRB"). This charge is not at issue in this lawsuit but Defendants rely upon the NLRB's ruling on the charge as support for their argument in this motion. The NLRB denied Plaintiff's charges stating that "[its] investigation revealed that by late July 2002, when Jones received a copy of the Employer's second step answer to his grievance, Jones was aware that the grievance was untimely, and that the Employer was raising a timeliness defense to the grievance." Therefore, the Board determined that Plaintiff should have filed his charge within six months of July 2002, when the issue of the untimely filing of his grievance was raised by the Postal Service. As he filed his charge with the NLRB almost two years later, the Board dismissed the charge as untimely pursuant to Section 10(b) of the NLRA.

[6] The Court notes that the Postal Service has not joined in this Motion but has filed an Answer to Plaintiff's Complaint.

6

judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(b) ("If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . .")

### III.  DISCUSSION

### A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[7] According to the *Celotex* Court,

In our view, the plain language of Rule 56(c) mandates the entry of summary

---

[7] "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

B.     PLAINTIFF'S COMPLAINT WAS TIMELY FILED

The statute of limitations for a duty of fair representation suit is six months. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281 (1983); *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir. 1984); *Schoonover v. Consolidate Freightways Corp.*, 49 F.3d 219, 221-222 (6th Cir. 1995).  In *DelCostello*, the Supreme Court held that for purposes of a hybrid § 301/duty of fair representation action, the statute begins to run when the claimant knows or should have known of the union's alleged breach of its duty of fair representation.  462 U.S. at 170-72, 103 S.Ct. at 2293-95.  *See also Schoonover, supra*, 49 F.3d at 221.

Ordinarily, however, before an aggrieved union employee may bring a judicial action either against his employer or his union, or both, he must first exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616 (1965); *Clayton v. Automobile Workers*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091 (1981).   As the Sixth Circuit explained in *Schoonover*, "[r]equiring exhaustion of the grievance process is appropriate because the arbitration award may make the employee whole, in spite of even the most egregious union failures." 49 F.3d at 222.  "To require otherwise would undermine the strong national policy favoring nonjudicial resolution of labor disputes by penalizing those who try to resolve their disputes through the grievance process before filing suit in federal court." *Id.*

9

Notwithstanding this strong national labor policy, Defendant APWU argues in this case that Plaintiff should not have waited until the arbitrator issued his decision before filing his Complaint in this action.  The Union contends that because the Postal Service had argued as early as in Step 2 of the grievance process in June 2002 that Plaintiff's grievance was untimely filed and should be denied, and again re-iterated that argument in the March 2004 arbitration hearing, Plaintiff should have known that his grievance was untimely then and filed his Complaint within six months thereafter.  Having not filed his Complaint until November 19, 2004, Defendants argue that this case is barred by the statute of limitations.

In support of this argument, Defendants rely upon a footnote in the *Schoonover* decision in which the Sixth Circuit commented on the general rule that a party is not required to sue before the arbitration panel renders its final decision:

> Of course this statement does not apply to those situations where the breach of fair representation stems from the union's failure to bring the arbitration claim or the union's decision to abandon it before its resolution.  In those circumstances, the law looks to when the grievant knew or should have known that the union had elected to proceed no further.  The statute of limitations then starts from that point.  *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987) ("employee's hybrid cause of action may arise when the Union takes an unequivocal position that it will not seek arbitration."). . .

49 F.3d at 221, n. 1.

Defendants' reliance on this footnote is misplaced.  First of all, as the text of the footnote and the excerpt from *McCreedy* quoted therein makes clear, this exception to

full exhaustion only applies in situations where the union has failed to take a grievance to arbitration or decides to abandon the grievance before final resolution. *See also Reynolds v. United Steel Workers of America, Local 24*, 129 F.3d 1265, 1997 6871515 (6th Cir. 1997) (plaintiff's DFR complaint filed 11 months after union withdrew his grievance held time-barred because plaintiff should have known once his grievance was withdrawn that his union no longer intended to pursue it); *Howell v. General Motors Corp.*, 19 Fed. Appx. 163, 165 (6th Cir. 2001) (plaintiff's DFR claim accrued when the union withdrew his grievance); *Bickers v. Int'l Ass'n of Machinists and Aerospace Workers*, 8 Fed. Appx. 514, 516 (6th Cir. 2001); (plaintiff's claim accrued when union failed to take any action with respect to his employment disputes); *Keller v. District Lodge No. 19, Int'l Ass'n of Machinists and Aerospace Workers,* 882 F.Supp. 560, 565 (S.D.W.Va. 1995) (duty of fair representation claims of plaintiffs who were aware of the union's decision not to pursue a buy-out at least nine months before filing suit held time-barred). Here, the Union *never* abandoned Plaintiff's grievance and indeed pursued it all the way through arbitration. Second, the fact that Plaintiff's employer *argued* the untimeliness issue does not mean that Plaintiff was obligated to accept those arguments as conclusive such that Plaintiff should have *known* that his grievance was untimely. Indeed, Plaintiff's Union obviously did not accept the arguments as conclusively deciding the issue as it continued to press the matter to arbitration notwithstanding that the USPS argued untimeliness as early as at Step 2 of the grievance process.

The foregoing demonstrates that Defendants' claim for dismissal of this action on statute of limitation grounds is without merit. Plaintiff properly waited until after the arbitrator rendered his final decision and timely filed his Complaint within six months thereafter as required under *DelCostello*.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant American Postal Workers Union's Motion to Dismiss is DENIED.[8]

        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated: September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager

---

[8] As noted above, however, with respect to Defendant Richard Blake, Plaintiff has concurred in his dismissal. Therefore, Plaintiff's claims against Richard Blake are DISMISSED.